Argued January 14, decided January 21, rehearing denied
February 18, 1913.

## ZURCHER v. PORTLAND RY. L. &. P. CO.*

(129 Pac. 126.)

Carriers—Carriage of Passengers—Contract for Carriage.

In an action by plaintiff, who claimed to have been injured in
attempting to board defendant's car, while defendant claimed that
she never became a passenger but was struck by a passing wagon,
the refusal of an instruction, that it is necessary to show that
not only did plaintiff intend to board the car, but that she gave
some notice of her intention to become a passenger, was error.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Rosa Zurcher against the Portland
Railway Light & Power Company.

The defendant operates a street railway in the City of
Portland for the transportation of passengers for hire.
The plaintiff alleges, in substance, that about February
10, 1911, she was waiting at the northwest corner of
First and Madison streets, in that city, where the defend-
ant's cars usually stop to receive passengers, and signaled
the east-bound Hawthorne car, which came to a full stop,
for the purpose of allowing her to board it, and she was
thereupon invited to become a passenger upon that car.
She then alleges that she "started to board the same for
said purpose at the usual and proper entrance therefor,
said car being at said time stationary; but before plaintiff

---

*On the question of the effect of signaling car to make one a pas-
senger, see notes in 13 L. R. A. [N. S.] 283 and 25 L. R. A. [N. S.] 408.

As to the effect of express refusal to accept one as a passenger upon
his status as such, see note in 15 L. R. A. [N. S.] 960.

On the right to prevent one boarding a moving car for purpose of
becoming a passenger, see note in 21 L. R. A. [N. S.] 36.

The question of the liability of a carrier for injuries to intending
passenger who enters car prematurely, is treated in a note in 33 L. R. A.
[N. S.] 583.

As to what injuries may be deemed the proximate result of failure
to stop street car for waiting passenger, see note in 33 L. R. A.
[N. S.] 1007.                                              REPORTER.

had sufficient time to get safely thereupon, and before she had reached a secure position thereupon, and while she was in the act of boarding said car, the defendant, by its agents, negligently and carelessly started said car without any warning whatsoever to plaintiff and in total disregard of her safety, thereby causing plaintiff to lose her balance and to be violently thrown from said car and onto the pavement of said street." After describing her resultant injuries to her damage in a sum named, she charges that the defendant was negligent in starting the car without giving her sufficient time to get aboard safely and in the failure of its conductor to catch hold of her and prevent her falling from the car; he being then in close proximity to her, in reach of her while she was attempting to board the car, and aware that she had lost her balance by reason of the improper start of the car.

The answer traversed all the allegations of the complaint except the corporate character and business of the defendant and the fact that the plaintiff had received an injury. The answer also charges that, on the occasion mentioned, while defendant's car was in motion, the plaintiff was walking towards it and somewhere in its vicinity, and by reason of her own negligence and the carelessness of the driver of a passing delivery wagon she was struck by the wagon and thereby injured, this being the same accident referred to in the complaint; that she knew, or ought to have known by the exercise of reasonable care, that the car was in motion; that she failed to keep a proper lookout while on the street or to exercise due care or caution for her safety; and that by reason thereof and of the negligence of the driver she came into collision with the wagon and was in that manner injured, if at all. This new matter alluded to was traversed by the reply. From a judgment for plaintiff succeeding a jury trial, the defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble* and *Mr. J. C. Simmons*, with an oral argument by *Mr. Rufus A. Leiter*.

For respondent there was a brief over the names of *Mr. Henry T. Bagley* and *Mr. Marion B. Meacham*, with an oral argument by *Mr. Bagley*.

MR. JUSTICE BURNETT delivered the opinion of the court.

Mrs. Zurcher and her 13 year old daughter testify, in substance, that the plaintiff stepped upon the car and took hold of the handhold, but before she could safely enter the car it was started with a sudden jerk, whereby she was thrown to the pavement, in which position the delivery wagon spoken of ran over her. One of defendant's conductors on another car and three disinterested bystanders testified that, while the car in question was in motion, the plaintiff approached it at about its middle, and before she reached it she turned around, when the wagon knocked her down; that the car did not touch her; and that she fell away from it. The conductor and motorman in charge of the car both testified that they did not see her at all and knew nothing of the accident until they were told of it. An inspection of the complaint in this connection shows that it might all have happened just as the defendant's witnesses describe it, and still the narrative of that pleading be true. Indeed, she avers she was in the act of boarding the car, but that might properly include her movement from her former situation on the sidewalk towards the car track in attempting to cross the street. She did not allege that she stepped upon or even touched the car, or that it struck her so as to cause the fall. She says she lost her balance, but how the car caused that result is not explained in the complaint.

Among other assignments, the defendant complains that the court committed error in refusing to give the following instruction requested by the defendant:

"Before a person can recover in a case of this kind it is necessary to show that not only did she intend to board the car, but had given some notice to the persons in charge of the car so that the persons in charge of said car knew, or in the exercise of reasonable care should have known, that the person was intending to board said car, and if the persons in charge of said car did not know that the person intended to board the same, and there was nothing reasonable to lead them to believe that the said party was intending to get upon said car, then I must instruct you that the defendant would not be liable."

This action is based upon the theory elaborated in the complaint that the defendant offered to transport the plaintiff as a passenger, and that the latter had accepted the offer in such a way as to constitute a contract of carrier and passenger between herself and the defendant. Such a contract, although generally proven by the acts of the parties and attendant circumstances, rather than by any express stipulation, must, like other agreements, result from a meeting of the minds of the parties. Considered as an offer and acceptance, it has often been held that stopping a car at the usual place for receiving passengers is an offer of the carrier to accept passengers, and many cases teach us that even slacking the speed of the car at such a place is likewise such an offer. On the other hand, it is equally well settled that, after the car has stopped, a subsequent starting of the same is a withdrawal of such an offer, so that a futile attempt to board the car will not create the contract of passenger and carrier.

The charge of the court reported in the record elaborates to a degree upon the duty of the defendant as a contracting party, but is silent as to the corresponding duty of the other contracting party, the plaintiff. In good reason, a person proposing to become a passenger on a street car moving along a busy street should perform some act or bring something to the notice of those in

charge of the car to distinguish the intending passenger from others of the throng on the street. The gravamen of the charge here is a negligent breach of a contract of passenger and carrier. Under the issues formed, it became necessary to prove that contract by showing not only the offer of the defendant, but also the acceptance of the plaintiff. The design of the requested instruction was to bring to the notice of the jury the latter element of the contract in question and to remind them that unless the agreement alleged was proven there could be no recovery for its breach. In the case of *Schepers* v. *Union Depot Railway Co.*, 126 Mo. 665 (29 S. W. 712), it is said:

"It must be conceded that there is difficulty in many cases in determining when the relationship of carrier and passenger begins and what acts of the parties are sufficient to create it. The difficulty is greater in case the carrier operates a street railway having no regular stations or station agents authorized to make contracts. In respect to such carriers passage must be taken hastily on the street at points prescribed by the rules of the carrier or by the police regulations of the municipality, yet one test applies alike to all, and that is the relation can only be created by a contract between the parties expressly or implied. There must always be an offer and request to be carried on one side and an acceptance on the other."

Shearman & Redfield, Neg. (4 ed.), Section 448; Patt. Ry. Acc. Law, Sections 210, 214; 2 Am. & Eng. Enc. Law (2 ed.), 742. *Duchemin* v. *Boston El. Ry. Co.*, 186 Mass. 353 (71 N. E. 780: 66 L. R. A. 980: 104 Am. St. Rep. 580: 1 Ann. Cas. 603), is very similar to the case at bar. The case stated for the plaintiff there was that, as the car approached him, he went toward it for the purpose of entering it, having given the motorman in control notice of his intention so to become a passenger, and as he was about to get on the car the trolley pole fell, striking a sign upon the car, and the pole and sign then both struck him. The case turned upon whether or not

there was a contract of passenger and carrier and the degree of care attendant upon such a relation. The court discusses the matter exhaustively and concludes as follows:

"So long as he remained a mere traveler on the highway, although upon it for the sole purpose of taking the car, the defendant did not owe him any other duty than that which it owed to any other person on the highway. Whether one just has dismounted from a street car or just is about to board it, he does not have the rights of a passenger."

A valuable note on this subject is appended to the report of the case in 104 Am. St. Rep.

Without alleging it, the plaintiff, as we have seen, testified that she stepped upon the car while it was stationary, which, upon all the authorities, would constitute an acceptance of the defendant's offer to take her as a passenger. On the other hand, the testimony for the defendant tends to show that the plaintiff did nothing to distinguish her from any other traveler along the street; the deduction being that there was no showing that she gave the defendant any notice of her acceptance of its offer so as to form the contract, the breach of which is laid as the ground of damages. The defendant was entitled to have its theory of the case presented by the instruction mentioned, and the court erred in refusing the request of the defendant in that behalf.

It seems that the trial was concluded near the hour of adjournment for the day. The parties agreed that the jury might return a sealed verdict. The court instructed them that three-fourths of the jury might return a verdict under the provisions of the present Article VII of the State constitution, in which case at least nine of them should sign the verdict; but that if their decision was unanimous it would be sufficient if the foreman alone signed it. See Laws 1911, p. 7. The judge also told them that, in the event of reaching a decision, they could either

leave the verdict in the custody of the foreman or of the bailiff in charge of the jury, to be returned into court at the beginning of the next session. On the following day, although the jurors were in attendance upon the court, they did not assemble to render the verdict; but it was handed to the court by the bailiff, and, in the presence of the counsel for both parties, was read and ordered filed. It was signed by the foreman alone, but two jurors of the panel made affidavits in purport that in fact the verdict was the decision of only nine of the jurors from which the affiants dissented, and that the decision was a quotient verdict, reached by a division by nine of the sum of all the estimates of the nine jurors participating in the verdict. This procedure was challenged only by a subsequent motion for a new trial, but, as it is not necessary to a decision of the case, we dismiss that feature with the observation that it is safer to proceed in the manner laid down by the statute in the reception and publication of a verdict; that the affidavits of the jurors impeaching the verdict would have more force if made before the publication of the verdict; and, lastly, that it is not safe for parties to take the chance of a verdict and afterwards make complaint.

Other errors are assigned by the defendant, but we deem it unnecessary to consider them.

The judgment is reversed, and the case remanded for further proceedings.   REVERSED: REHEARING DENIED.